**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. _____

TERESA CHATEAUNEUF and those similarly situated;

    Plaintiff,
v.

WALMART INC.;

    Defendant.

## CLASS ACTION COMPLAINT

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

2. There is "minimal diversity" because Defendant is a foreign business entity and a substantial portion of the proposed class, including Plaintiff, are Colorado residents.

3. Within the applicable statute of limitations, Defendant had thousands, and likely well over 10,000, employees in Colorado subject to Defendant's alleged off-the-clock pay policies.

4. Class-wide damages for the thousands of employees is well in excess of $5 million.

5. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in Colorado.

### PARTIES

6. At all times material to the allegations of the complaint, Plaintiff was domiciled in the District of Colorado.

7. At all times material to the allegations of the complaint, Defendant WALMART INC. (hereinafter, "Walmart") was a Delaware corporation with its principal place of business in Arkansas.

8. At all times material to the allegations of the complaint, Walmart was registered with the Colorado Secretary of State to do business in Colorado and in fact did do business in Colorado.

## STATEMENT OF FACTS

### I. Walmart's Operations

9. Walmart operates a sprawling international retail business, with stores across the United states.

10. Walmart currently operates 10,500 stores around the world, employing a total 2.3 million hourly associates globally and 1.6 million hourly associates in the United States.

11. Walmart currently operates 105 stores in Colorado, employing 30,491 hourly associates. *See* https://corporate.walmart.com/about/colorado.

### II. Plaintiff's Employment by Walmart

12. Plaintiff worked for Walmart at its Evergreen store from in or about October 2018 to in or about August 2021.

13. At all times, Plaintiff was a non-exempt hourly employee.

14. Plaintiff generally was on the clock for 5 days a week, 10 hours a day.

15. Plaintiff was a "courtesy clerk," working the customer service desk by the cash registers.

16. Walmart had the power to hire and fire Plaintiff and those similarly situated.

17. Walmart hired Plaintiff in 2018 and Plaintiff quit her job in 2021 because of her husband's ill health.

18.     Walmart set the rate of pay for Plaintiff and those similarly situated.

19.     Walmart maintained employment records for Plaintiff and those similarly situated, including providing a platform called "OneWalmart"—currently available at One.Walmart.Com—where Walmart maintains employee work schedules, time records, and pay records.

20.     Walmart also maintained a cell phone app call "me@walmart" where employees could check their schedule and do a health check-in, which Plaintiff and those similarly situated had to do prior to arriving at work. The "me@walmart" health check-in would ask various questions about covid symptoms and exposure.

21.     Walmart set the work schedules for Plaintiff and those similarly situated, including strict requirements for clocking in and out on time and for avoiding overtime.

22.     These requirements included policies that punished employees for clocking in early or clocking out late. Clocking in early or out late resulted in employees receiving a "point" and the accumulation of enough points would result in termination.

### III.    Walmart's Illegal Off the Clock Covid Screening Policies

23.     Under Colorado law, "'time worked' means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so." *See* 7 C.C.R. § 1103-1(1.9).

24.     This includes "requiring or permitting employees to be on the employer's premises, on duty, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain on-premises) — including but not limited to, if such tasks take over one minute, putting on or removing required work clothes or gear (but not a uniform worn

outside work as well), receiving or sharing work-related information, security or safety screening, remaining at the place of employment awaiting a decision on job assignment or when to begin work, performing clean-up or other duties "off the clock," clocking or checking in or out, or waiting for any of the preceding — shall be considered time worked that must be compensated." *See* 7 C.C.R. § 1103-1(1.9.1).

25. In addition, "travel time" is time worked when it occurs "after compensable time starts." *See* 7 C.C.R. § 1103-1(1.9.2).

26. During the COVID pandemic, *i.e.*, from in or about March 2020 until at least August 2021 (when Plaintiff left Walmart), Walmart implemented a company-wide policy of requiring health screenings before its employees could clock in at all stores, including all Colorado Stores.

27. These health screenings required (1) the employee to answer a series of questions about covid symptoms and exposure and (2) a temperature check.

28. When the pandemic hit initially in or about March 2020, employees would do the entire health screening at their work location prior to clocking in.

29. In or about two-months after March 2020, Walmart employees could answer the health questions on their own cell phones or tablets "me@walmart" app prior to arriving at their store. Walmart employees could then go to the store and have their temperature checked.

30. Employees were not compensated for having to use their phone for the me@walmart app, for the time using the me@walmart app, or for the time between using the me@walmart app and clocking in at the store.

31. Plaintiff and those similarly situated would have to arrive early, wait in a line, answer health screening questions and have their temperature checked.

32. Only after the COVID screening could Plaintiff and those similarly situated clock in.

33. This was true at every Walmart store in Colorado.

34. Walmart ensured Plaintiff and those similarly situated complied with this off the clock work policy by using policies that would punish employees for clocking in early or out late. If an employee clocked in early or out late too often, it would result in eventual termination.

35. This off the clock work left Plaintiff and those similarly situated unpaid for hourly contract wages and minimum wage.

36. In addition, because many employees, including Plaintiff, were clocked in for more than 40 hours a week or just shy of 12 hours in a day, this off the clock work often resulted in unpaid overtime, including for Plaintiff.

## RULE 23 CLASS ALLEGATIONS

37. Plaintiff alleges all claims as a Fed R. Civ P. 23 class action on her own behalf and on behalf of the class she seeks to represent.

38. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the Rule 23 Class as follows:

> **ALL CURRENT AND FORMER NON-EXEMPT HOURLY EMPLOYEES WHO WORKED AT DEFENDANT'S STORES IN COLORADO WITHIN THE APPLICABLE STATUTE OF LIMITATIONS.**

39. The class is so numerous that joinder of all potential class members is impracticable. Plaintiff does not know the exact size of the class since that information is within the control of Walmart. However, Plaintiff estimates that, based on the size of Walmart's operations, the class is composed of well over 10,000 persons. The exact size of the class will be easily ascertainable from Walmart's employment records.

40.     There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include: whether Plaintiff and those similarly situated are entitled to compensation for time spent on the job site and on duty prior to clocking in or after clocking out; the amount of time spent on these off the clock duties, the compensation due for these off the clock duties, whether these off the clock duties required Plaintiff and those similarly situated to work more than 40 hours in a week or 12-hours in a day, whether Walmart failed to keep accurate records of time worked as required by Colorado law, and whether Walmart's actions were willful.

41.     The class claims asserted by Plaintiff are typical of the claims of all the potential class members because they all experienced the same or similar working conditions and pay practices. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of low-wage, hourly workers like the class members here, who are unsophisticated, are unlikely to seek legal representation, cannot realistically navigate the legal system *pro se*, and whose small claims make it difficult to retain legal representation if they do seek it.

42.     Plaintiff will fairly and adequately protect and represent the interests of the class. She and the proposed class were all Walmart warehouse employees and were all victims of the same violations of law as the other class members, including numerous violations of state wage and hour laws.

43.     Plaintiff is represented by counsel experienced in litigation on behalf of low-wage workers and in wage and hour class actions.

44.     The prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Walmart.

45.     Each class member's claim is relatively small. Thus, the interest of potential class members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

46.     Plaintiff is unaware of any members of the putative class who are interested in presenting their claims in a separate action.

47.     Plaintiff is unaware of any pending litigation commenced by members of the class concerning the instant controversy.

48.     It is desirable to concentrate this litigation in this forum because all parties are domiciled in this jurisdiction or are registered to do business in this jurisdiction. Moreover, the acts or omissions giving rise to the claims in this case largely, or completely, occurred in this jurisdiction.

49.     This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of wage claims to both class litigation and the use of representative testimony and representative documentary evidence.

50.     The contours of the class will be easily defined by reference to the payroll documents Walmart was legally required to create and maintain.

## COUNT I: VIOLATION OF THE COLORADO WAGE CLAIM ACT, C.R.S. §§ 8-4-101, *et seq.*

51. Plaintiff brings this claim on behalf of herself and all those similarly situated pursuant to Fed. R. Civ. P. 23.

52. At all material times, Walmart was an "employer" within the meaning of the Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq.*

53. At all material times, Walmart employed "employees," including Plaintiff and the Rule 23 Class, within the meaning of the Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq.*

54. As a result of the foregoing conduct, as alleged, Walmart failed to pay wages due thereby violating, and continuing to violate, the Wage Claim Act. These wages include minimum wage, hourly contract wages, and overtime wages.

55. These violations were committed knowingly, willfully and with reckless disregard of applicable law, as Walmart knew it was requiring its employees to perform off the clock job duties and knew it was paying them nothing for these off the clock job duties.

56. As a result, Plaintiff has been damaged in an amount to be determined at trial.

57. Plaintiff and the Rule 23 Class are therefore entitled to unpaid wages, statutory penalties, attorney's fees, costs, and applicable statutory interest.

## COUNT II: VIOLATION OF THE COLORADO MINIMUM WAGE ACT, C.R.S. §§ 8-6-101, *et seq*.

58. Plaintiff brings this claim on behalf of herself and all those similarly situated pursuant to Fed. R. Civ. P. 23.

59. At all material times, Walmart has been an "employer" within the meaning of the Colorado Minimum Wage Act.

60.     At all material times, Walmart employed, and continues to employ, "employees," including Plaintiff and the members of the Rule 23 Class, within the meaning of the Minimum Wage Act.

61.     Plaintiff and the Rule 23 Class were employees of Walmart within the meaning of the Minimum Wage Act.

62.     As a result of the foregoing conduct, as alleged, Walmart has violated, and continues to violate, the Minimum Wage Act. These violations were committed knowingly, willfully and with reckless disregard of applicable law.

63.     Specifically, Walmart knew it was requiring its employees to perform off the clock job duties and knew it was paying them nothing for these off the clock job duties.

64.     As a result, Plaintiff and the Rule 23 Class have been damaged in an amount to be determined at trial and are entitled to unpaid wages, attorney's fees, costs, and applicable statutory interest.

## COUNT III: CIVIL THEFT, C.R.S. § 18-4-405

65.     Plaintiff brings this claim on behalf of herself and all those similarly situated pursuant to Fed. R. Civ. P. 23.

66.     At all material times, Walmart has been an "employer" within the meaning of the Colorado Minimum Wage Act.

67.     At all material times, Walmart employed, and continues to employ, "employees," including Plaintiff and Rule 23 Class, within the meaning of the Minimum Wage Act.

68.     Plaintiff and Rule 23 Class were employees of Walmart within the meaning of the Minimum Wage Act.

69. Walmart's intentional failure to pay minimum wage under the Minimum Wage Act constitutes theft pursuant to C.R.S. § 18-4-401. *See* C.R.S. § 8-6-116.

70. Specifically, Walmart knew it was requiring its employees to perform off the clock job duties and knew it was paying them nothing for these off the clock job duties.

71. As a result, Walmart's failure to pay minimum wage constitutes civil theft pursuant to C.R.S. § 18-4-405.

72. Plaintiff and Rule 23 Class are entitled to treble damages, attorney's fees, costs, and statutory interest.

## DEMAND FOR JURY TRIAL

73. Plaintiff demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

74. Plaintiff respectfully requests an Order and Judgment from this Court:

    a. Certifying the Rule 23 class, naming Plaintiff as representative of the class Plaintiff seeks to represent, and naming Plaintiff's counsel class counsel;

    b. granting judgment in favor of Plaintiff and the Rule 23 Class against Walmart;

    c. awarding Plaintiff and the Rule 23 class their actual damages and any applicable statutory damages;

    d. awarding Plaintiff and those similarly situated their costs;

    e. awarding Plaintiff and those similarly situated their attorney's fees;

    f. awarding Plaintiff and those similarly situated prejudgment and post-judgment interest, when allowable by law; and

    g. granting such other relief as this Court deems just and proper.

Respectfully Submitted,

*s/Brian D. Gonzales*
Brian D. Gonzales, CO Atty. Reg. # 29775
THE LAW OFFICES OF BRIAN D. GONZALES, PLLC
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
(970) 214-0562
BGonzales@ColoradoWageLaw.com

Alexander Hood, Atty Reg. # 42775
HOOD LAW OFFICE, PLLC
1312 17th Street # 1028
Denver, CO 80202
Telephone: (720) 381-4142
Alex@HoodLawPLLC.com

Attorneys for Plaintiffs

11